**Opinion issued April 30, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

**NO. 01-25-00109-CV**

————————————————

**FOLEY & LARDNER LLP, SUCCESSOR-IN-INTEREST TO GARDERE WYNNE SEWELL, LLP, TIMOTHY SPEAR, JAMES G. MUNISTERI, AND SHARON M. BEAUSOLEIL, Appellants**

**V.**

**STEPHEN H. DERNICK AND DAVID D. DERNICK, Appellees**

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-77937**

---

**DISSENTING OPINION**

This interlocutory appeal is the second appeal involving this suit for breach of fiduciary duty filed by Appellees against their former law firm and some of its lawyers—the Appellants. When Appellees first filed suit, Appellants filed a

combined original answer and motion to compel arbitration. Later, without taking any action to set their motion to compel for hearing, Appellants moved to dismiss Appellees' claims under the Texas Citizens Participation Act ("TCPA").[1] Appellants prevailed, securing a benefit they would not have been able to secure in arbitration: dismissal of Appellees' claims *with prejudice* and an award of more than $100,000 in attorneys' fees and costs.

In the first appeal, we held the TCPA was not applicable. We reversed the trial court's dismissal of Appellees' claims and remanded to the trial court for further proceedings.[2] On remand, Appellants set their motion to compel arbitration for hearing for the first time. Concluding Appellants had waived their arbitration rights, the trial court denied the motion and this second appeal ensued. The majority concludes that Appellants did not substantially invoke the judicial process by securing dismissal of Appellees' claims *with prejudice* under the TCPA and thus they did not waive their right to arbitration. I respectfully dissent.

Although Appellants filed a motion to compel arbitration with their answer, they sat on their motion, seeking to pursue relief under the TCPA instead—a remedy not available in arbitration. Appellants' choice paid off. They secured a complete

---

[1]   *See* TEX. CIV. PRAC. & REM. CODE §§ 27. 001—.011 ("TCPA").

[2]   *See Dernick v. Foley & Lardner LLP*, No. 01-22-00251-CV, 2024 WL 3941011 (Tex. App.—Houston [1st Dist.] Aug. 27, 2024, no pet.) (mem. op.).

victory by ending the litigation in court, foreclosing arbitration proceedings altogether. It is difficult to imagine a clearer example of a party substantially invoking the judicial process inconsistent with the right to compel arbitration than one who seeks a benefit not available in arbitration to secure complete dismissal of his opponents' claims on the merits, with *res judicata* implications, and only seeks to enforce its right to arbitration *after* reversal of the dismissal on appeal.

On this record, and in light of our decision in *Buzbee v. Terry & Thweatt, P.C.*,[3] I would conclude that Appellants waived their rights to arbitration. I would affirm the trial court's judgment.

### Background

A full recitation of the facts leading to the parties' dispute is set forth in this Court's earlier opinion in *Dernick v. Foley & Lardner LLP*, No. 01-22-00251-CV, 2024 WL 3941011, at *1 (Tex. App.—Houston [1st Dist.] Aug. 27, 2024, no pet.) (mem. op.).

To summarize, in November 2021, Appellees ("Dernicks") filed suit against their former law firm and some of the firm's attorneys (collectively, "Foley") asserting claims for breach of fiduciary duty, civil conspiracy, and aiding and abetting. One month later, in December 2021, Foley filed a combined "Application

---

[3]     *Buzbee v. Terry & Thweatt, P.C.*, No. 01-23-00123-CV, 2023 WL 7311212 (Tex. App.—Houston [1st Dist.] Nov. 7, 2023, pet. denied) (mem. op.).

to Compel Arbitration and Stay Proceedings [and] Subject to that Application, Defendant's Original Answer" ("Motion to Compel").[4] *Dernick*, 2024 WL 3941011, at *4. Foley alleged that the pending claims were subject to arbitration because the engagement letter the Dernicks signed when they first retained Foley's legal services required binding arbitration in Houston, Texas for "any dispute or controversy regarding or arising out of [Foley's] representation."

Although Foley filed its combined Motion to Compel and Original Answer in December 2021, it took no action to set the Motion to Compel for submission or hearing. Instead, on January 25, 2022, Foley filed a motion to dismiss under the TCPA ("TCPA Motion") seeking to dismiss the Dernicks' claims with prejudice. Foley argued that because the Dernicks' legal action was based on and in response to Foley's "exercise of the right to petition," dismissal was proper under the TCPA.[5] *Id.* The Dernicks filed a response to the motion on March 11, 2022. And on March

[4] Although Foley's Motion to Compel is not included in the clerk's record for this appeal, it was included in the record for the first appeal. The Court may take judicial notice of the motion in this appeal. *See In re Seay*, No. 05-23-00215-CV, 2023 WL 2494439, at *1 (Tex. App.—Dallas Mar. 14, 2023, no pet.) (mem. op.) ("We may exercise our discretion to take judicial notice of the clerk's record in relator's related appeal."); *In re Estate of York*, 934 S.W.2d 848, 851 (Tex. App.—Corpus Christi-Edinburg 1996, writ denied) ("[A] court may take judicial notice of its own records in a case involving the same subject matter between the same, or practically the same, parties.").

[5] The TCPA motion included the following sentence: "By asserting its procedural rights to dismissal under Tex. Civ. Prac. & Rem. Code § 27.003, Foley expressly preserves and does not waive its right to arbitrate any claims not ultimately subject to dismissal."

21, 2022, the trial court granted Foley's TCPA Motion dismissing the Dernicks' claims *with prejudice* and awarding attorneys' fees and costs to Foley. *Id.* at *5.

In August 2024, we issued an opinion reversing the trial court's judgment concluding that the TCPA was not applicable to the Dernicks' claims. We remanded the case to the trial court for further proceedings. *Id.* at *14–15. On remand, Foley filed a supplemental brief in support of its Motion to Compel and for the first time set the motion for hearing. Foley argued in its supplemental brief that Texas public policy favors arbitration and that the Dernicks and Foley were parties to a valid arbitration agreement with respect to all claims asserted by the Dernicks. Foley argued that it had not substantially invoked the litigation process by filing its TCPA Motion because the Motion to Compel was its first filed pleading. It argued that because it had invoked the TCPA only "defensively and in the alternative to its arbitration demand, it [had] expressly preserved and []not waive[d]" its arbitration application. And even if it had substantially invoked the judicial process, Foley argued no prejudice had resulted to the Dernicks because Foley had not delayed in filing its Motion to Compel, the Dernicks had not incurred substantial fees, and arbitration would not compromise the Dernicks' legal position on the merits of their claims. Foley thus argued that arbitration should be compelled.

In their response, the Dernicks did not dispute the existence of a valid arbitration agreement or that their claims fell within the scope of the agreement.

5

Rather, the Dernicks asserted waiver as a defense to arbitration. They argued that Foley had not set its Motion to Compel for hearing until more than three years after first filing the motion and only after suffering an adverse appellate ruling resulting in reversal of the trial court's order granting Foley's TCPA Motion. The Dernicks argued that Foley had substantially invoked the judicial process by seeking—and obtaining—dismissal of their claims with prejudice and securing an award of more than $100,000 in attorney's fees under the TCPA. The Dernicks also argued that Foley's substantial invocation of the judicial process had resulted in prejudice because the TCPA Motion and resulting appeal had caused them to incur fees and expenses they otherwise would not have incurred and also forced them to "prematurely marshal [their] proof."

Foley replied arguing that "no case ha[d] *ever* held that a party who timely asserts and preserves a right to arbitrate waives that right simply by pursuing a motion to dismiss under the TCPA, without more." (Emphasis in original.) It argued that the filing of a TCPA motion "does not substantially invoke the judicial process and waive arbitration, particularly where the movant contemporaneously asserts and expressly preserves its arbitration rights."

The trial court denied Foley's Motion to Compel.[6] This interlocutory appeal ensued.[7]

**Standard of Review and Applicable Law**

A party seeking to compel arbitration must establish the (1) existence of a valid arbitration agreement and (2) that the claims fall within the scope of the agreement. *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 397 (Tex. 2020); *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014). If the party seeking arbitration satisfies its initial burden, the burden shifts to the party resisting arbitration to present evidence supporting a defense to enforcement of the arbitration provision. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Once the burden shifts to the nonmovant, a presumption exists in favor of arbitration. *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011); *Garcia v. Huerta*, 340 S.W.3d 864, 869 (Tex. App.—San Antonio 2011, pet. denied). "Absent a valid defense to arbitration, 'the trial court has no discretion but to compel arbitration and stay its proceedings once the existence and application of the

---

[6] The trial court conducted a hearing on Foley's Motion to Compel. The transcript of the hearing is not in the appellate record. According to the Dernicks, no evidence was presented at the hearing.

[7] *See* TEX. CIV. PRAC. & REM. CODE § 171.098(a)(1) (providing party may appeal judgment denying motion to compel arbitration made pursuant to Texas Arbitration Act); *Chambers v. O'Quinn*, 242 S.W.3d 30, 31 (Tex. 2007) (noting Texas Arbitration Act allows interlocutory appeals from orders that deny arbitration). The parties do not dispute that the Texas Arbitration Act governs the present action.

[arbitration] agreement has been shown.'" *Northpointe LTC, Ltd. v. Durant*, No. 01-22-00215-CV, 2022 WL 17835223, at \*3 (Tex. App.—Houston [1st Dist.] Dec. 22, 2022, no pet.) (mem. op.) (quoting *In re Autotainment Partners, Ltd. P'ship*, 183 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2006, no pet.)).

Implied waiver by litigation conduct is an affirmative defense to enforcement of an arbitration provision. *Henry*, 551 S.W.3d at 115; *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511–12 (Tex. 2015). A party seeking to establish implied waiver of the right to arbitrate must establish that (1) the party moving for arbitration substantially invoked the judicial process inconsistent with the right to compel arbitration, and (2) the non-movant suffered detriment or prejudice as a result. *See id.*; *see also Thomas Craig Constr., Inc. v. Park Square Condo. Owner's Ass'n*, No. 01-22-00918-CV, 2025 WL 1759012, at \*1, 6 (Tex. App.—Houston [1st Dist.] June 26, 2025, no pet.) (mem. op.) ("The right to arbitrate can be waived by conduct—but not easily.").

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Henry*, 551 S.W.3d at 115 (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009)). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to guiding rules or principles." *Buzbee v. Terry & Thweatt, P.C.*, No. 01-23-00123-CV, 2023 WL 7311212, at \*2 (Tex. App.—Houston [1st Dist.] Nov. 7, 2023, pet. denied) (mem.

op.). We "defer to the trial court's factual determinations if they are supported by [the] evidence but [we] review its legal determinations de novo." *Henry*, 551 S.W.3d at 115. When facts are undisputed, whether the right to arbitrate has been waived is a question of law we review *de novo*. *Id.* (stating whether party has waived right to arbitrate is question of law appellate courts review de novo).

**Substantial Invocation of the Judicial Process**

The parties do not dispute that there is a valid arbitration agreement or that the Dernicks' claims fall within the scope of the arbitration clause. Rather, the only question before us is whether the Dernicks established Foley waived its right to arbitration by substantially invoking the judicial process. I would conclude they did.

Whether a party has substantially invoked the judicial process "depends on the totality of the circumstances." *G.T. Leach Builders*, 458 S.W.3d at 512 (citing *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008)). We examine the issue on a case-by-case basis. *Thomas Craig Constr.*, 2025 WL 1759012, at \*6. The "wide variety" of factors courts consider in determining whether the judicial process has been "substantially invoked" include:

(1)     how long the movant waited to compel arbitration;

(2)     the reasons for the movant's delay;

(3)     whether and when, during the period of delay, the movant knew of the arbitration agreement;

(4)     how much discovery the movant conducted before moving to

9

compel arbitration and whether that discovery related to the merits;

(5)     whether the movant requested the court to dispose of claims on the merits;

(6)     whether the movant asked the court to dispose of the claims on the merits;

(7)     the extent of the movant's pretrial activities related to the merits (as opposed to arbitrability or jurisdiction);

(8)     the time and expense the parties committed to the litigation;

(9)     whether the discovery conducted would be unavailable or useful in arbitration;

(10)    whether activity in court would be duplicated in arbitration; and

(11)    when the case is set for trial.

*G.T. Leach Builders*, 458 S.W.3d at 512 (citing *Perry Homes*, 258 S.W.3d at 590–91). No single factor is dispositive. *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016). Nor must all or most of these factors be present to support waiver. *Courtright v. Allied Custom Homes, Inc.*, 647 S.W.3d 504, 516 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (citing *Perry Homes*, 258 S.W.3d at 591). Rather, "[c]ourts look to the specifics of each case." *Id.*; *see also Specialty Select Care Ctr. of San Antonio, L.L.C. v. Owen*, 499 S.W.3d 37, 47 (Tex. App.—San Antonio 2016, no pet.) ("There is no bright-line test for substantial invocation; we consider the totality of the circumstances in the context of the particular case.");

*Pounds v. Rohe*, 592 S.W.3d 549, 554 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("The specifics of each case matter.") (citing *Henry*, 551 S.W.3d at 116).

"Merely taking part in litigation" is insufficient to constitute waiver by litigation conduct. *G.T. Leach Builders*, 458 S.W.3d at 512 (quoting *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (orig. proceeding)). Delay alone is also generally insufficient to establish waiver. *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (orig. proceeding).

**Application of *Perry Homes* Factors**

Six of the *Perry Homes* factors are implicated here.

### Factors 1, 2, and 3: Filing, Delay, and Knowledge

With respect to the first two factors, Foley knew about the arbitration agreement from the outset of litigation, yet it did nothing to obtain a ruling on its Motion to Compel in the trial court until years later, after this Court reversed the trial court's order granting Foley's TCPA Motion. Even after remand, Foley delayed in seeking relief. Our mandate issued on December 9, 2024. Foley did not set its Motion to Compel for hearing until February 7, 2025.

Foley argues that it did not waive its right to arbitration because it filed its Motion to Compel together with its original answer and further that it filed its TCPA Motion subject to and in the alternative to its Motion to Compel. But by doing nothing to set its Motion to Compel for hearing and seeking relief under its TCPA

11

Motion first, Foley made its Motion to Compel subject to a ruling on its TCPA Motion. The fact that Foley had a deadline in which to file its TCPA Motion did not prevent it from setting its Motion to Compel for hearing.[8] As discussed below, Foley had ample time to seek a ruling on its Motion to Compel, and later on its TCPA Motion, or it could have set both motions for hearing at the same time. It did neither. Foley instead sought relief under its TCPA Motion first, presumably hoping for a favorable result obviating the need to press its Motion to Compel later.

### Factors 4 and 5: Discovery and Disposition on the Merits

The fourth factor contemplates the amount of discovery the movant conducted before moving to compel arbitration and whether the discovery related to the merits. While Foley asserts it did not serve any written discovery, a party opposing a TCPA motion to dismiss must present actual evidence to establish by clear and specific evidence a prima facie case for each essential element of the claim in question.[9] *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 28–29 (Tex. App.— Houston [14th Dist.] 2020, no pet.). As our sister court has held, the TCPA "is designed to accelerate the presentation of evidence to support the merits of a suit in

---

[8] *See* TEX. CIV. PRAC. & REM. CODE § 27.003(b) (providing that TCPA motion must be filed "not later than the 60th day after the date of service of the legal action" unless parties extend time by mutual agreement or court extends time "on a showing of good cause").

[9] *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c) (noting plaintiff must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question" in order to avoid dismissal under TCPA).

those circumstances [where] the act applies." *Id.* at 22. A non-movant may not rely on pleadings alone to establish a prima facie case for each essential element of its claims. *Id.* at 28 (holding that party defending TCPA motion must present actual evidence, not merely allegations of its petition, to establish prima facie case for each element of its claim). The fact that Foley did not serve written discovery thus did not obviate the need for the Dernicks to marshal their evidence prematurely to defend against Foley's TCPA motion. Indeed, in responding to Foley's TCPA Motion, the Dernicks proffered nine exhibits spanning more than 200 pages of evidence.

The fifth element considers whether the movant asked the trial court to dispose of the claim on the merits before moving to compel arbitration. When a movant previously attempts to dispose of the litigation on the merits, that "ordinarily is a key factor in assessing a waiver defense." *Buzbee*, 2023 WL 7311212, at *4 (citing *Pounds*, 592 S.W.3d at 554); *see also Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 575 (Tex. 2014) (noting "key factors" in determining whether right to arbitration was waived include "the reason for delay in moving to enforce arbitration, the amount of discovery conducted by the movant, and whether the movant sought disposition on the merits") (citing *Perry Homes*, 258 S.W.3d at 590–93).

Foley argues that by filing its TCPA Motion, it merely preserved its statutory TCPA defense. But Foley did more than just preserve "a statutory TCPA defense."

13

It secured a ruling on its TCPA Motion before ever seeking to enforce its right to arbitration, which had the trial court enforced, would have ended the litigation and secured an arbitration forum for resolution of the claims: the forum Foley now requests. In seeking relief under the TCPA first, however, Foley did not seek an arbitration forum; it sought to conclude the litigation altogether *with prejudice*, and it prevailed in that regard.

Foley argues that its TCPA Motion was not a ruling on the merits, but merely "defensive in nature" comparing the motion to a special appearance or plea to the jurisdiction.[10] The majority argues similarly that a TCPA judgment is not a trial on the merits or a motion for summary judgment. That is true but of no moment here.

While a TCPA motion to dismiss is not the equivalent of a trial, the TCPA is a "procedural vehicle to address the merits of a claim." *Clear Channel Outdoor, LLC*, 616 S.W.3d at 22. Unlike a dismissal for lack of jurisdiction, "dismissal under the TCPA is a judgment on the merits [that] carries res judicata implications." *Id.*;

---

[10]    Foley cites *In re Vesta Insurance Grp., Inc.*, 192 S.W.3d 759 (Tex. 2006) in support of its argument that a dismissal motion does not necessarily result in waiver. *In re Vesta* is inapposite. It stands for the unremarkable position that seeking dismissal based on jurisdictional grounds—a ruling that does not impact the merits of the underlying claims—does not result in waiver. *Id.* at 764. The TCPA Motion Foley filed and the relief it secured—by contrast—was a ruling that resulted in dismissal of the claims *with prejudice* with res judicata implications. *See Montoya Frazier v. Maxwell*, — S.W.3d —, No. 02-23-00103-CV, 2025 WL 494699, at *27 (Tex. App.—Fort Worth Feb. 13, 2025, pet. denied) ("[A] TCPA dismissal *is* a merits judgment and carries res judicata implications.") (emphasis in original).

*see also Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 500 S.W.3d 26, 40 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (holding that dismissal under TCPA "constitutes a final determination on the merits"); *Montoya Frazier v. Maxwell*, — S.W.3d —, No. 02-23-00103-CV, 2025 WL 494699, at *27 (Tex. App.—Fort Worth Feb. 13, 2025, pet. denied) ("A TCPA dismissal *is* a merits judgment and carries res judicata implications.") (emphasis in original); *Maldonado v. Franklin*, No. 04-18-00819-CV, 2019 WL 4739438, at *2 (Tex. App.—San Antonio Sept. 30, 2019, no pet.) (mem. op.) ("Dismissal of a legal action under the TCPA is with prejudice to the refiling of the legal action.").

Thus, contrary to Foley's argument, its TCPA Motion was not like a jurisdictional motion or merely "defensive in nature." Foley secured the benefit of complete dismissal of the Dernicks' claims *with* prejudice with a resulting award of more than $100,000 in attorneys' fees and costs and the end of litigation.

### Factor 8: Time and Expense of Litigation

The eighth factor queries how much time and expense the parties committed to the litigation before the movant sought to compel arbitration. The record reflects that the Dernicks "incurred more than 50.5 hours of time—equating to $17,675 in fees—defending against the TCPA [M]otion at the trial level." The Dernicks also paid "more than $66,284 in appellate fees to have the dismissal on the merits reversed."

The Dernicks filed suit in November 2021, and the trial court granted the TCPA Motion in March 2022. Our mandate reversing the trial court's judgment issued in December 2024. Foley set its Motion to Compel for hearing in February 2025.

### *Seeking Arbitration After Adverse Ruling*

In considering whether a party has waived its arbitration rights, we also have held that "[w]aiting to seek arbitration until after receiving an adverse ruling on the merits in litigation is perhaps the clearest type of conduct that is inconsistent with the right to arbitrate." *Pounds*, 592 S.W.3d at 556; *Prof'l Advantage Software Sols., Inc. v. W. Gulf Mar. Ass'n Inc.*, No. 01-15-01006-CV, 2016 WL 2586690, at \*4 (Tex. App.—Houston [1st Dist.] May 5, 2016, no pet.) (mem. op.) ("Rather than seeking to avoid litigation, [the arbitration movant] chose to litigate the merits of the case in the trial court on multiple occasions. Unsuccessfully attempting to obtain a favorable result in court before requesting a referral to arbitration is the type of litigation behavior that supports the trial court's waiver finding.").

Relevant here, we held in *Buzbee v. Terry & Thweatt* that a defendant who moved to compel arbitration after unsuccessfully seeking dismissal of the plaintiff's claims under the TCPA had substantially invoked the litigation process resulting in waiver of its arbitration rights. 2023 WL 7311212, at \*4–5. Like the appeal here, *Buzbee* involved an interlocutory appeal arising from the trial court's denial of a

16

motion to compel arbitration. 2023 WL 7311212, at *1. The plaintiff law firm, Terry & Thweatt ("Terry"), sued another law firm and its named partner (collectively, "Buzbee") for tortious interference with a contract. *Id.* at *2. Like Foley did here, Buzbee filed a TCPA motion to dismiss the claim. *Id.* The trial court denied the TCPA motion and Buzbee appealed. *Id.* This Court affirmed the trial court's denial of the TCPA motion, and the Texas Supreme Court denied Buzbee's petition for review. *Id.* After exhausting its appeals and more than two and a half years after suit was filed, Buzbee filed a motion to compel arbitration, "asserting for the first time that [Terry] was required to arbitrate its dispute with Buzbee." *Id.* The trial court denied the motion to compel arbitration and Buzbee appealed. *Id.*

On appeal, we held that Buzbee had substantially invoked the judicial process and thus waived its right to arbitration by engaging in conduct that "evince[d] the 'inherent unfairness' sufficient to establish prejudice." *Id.* at *5. In considering whether Buzbee had waived the right to arbitrate, we considered "whether Buzbee's litigation conduct demonstrate[d] an 'aggressive litigation strategy' that would substantially invoke the litigation process." *Id.* at *4 (citing *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 40 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)). Applying the *Perry Homes* factors, we concluded that Buzbee had attempted to "have it both ways." *Id.* Buzbee first sought a determination on the merits of Terry's claims by filing a TCPA motion and seeking dismissal of Terry's

claims on the merits. *Id.* Only after getting an adverse ruling in the trial court and exhausting its appellate rights did Buzbee pursue arbitration in the trial court, more than two years after Terry first filed suit. *Id.* at *5. Holding Buzbee's TCPA motion and related activity constituted substantial invocation of the judicial process, we held that "failing to seek arbitration until after proceeding in litigation to an adverse result is the clearest form of inconsistent litigation conduct and is inevitably found to constitute substantial invocation of the litigation process resulting in waiver." *Id.* (quoting *Haddock v. Quinn*, 287 S.W.3d 158, 180 (Tex. App.—Fort Worth 2009, pet. denied) (orig. proceeding)).

We next considered whether Terry had been prejudiced by Buzbee's acts, explaining that prejudice may be demonstrated "in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id.* (citing *Perry Homes*, 258 S.W.3d at 597). We noted that during the two years before Buzbee sought arbitration, Terry had been forced "to respond to Buzbee's TCPA motion and was therefore obligated to present evidence to defeat Buzbee's TCPA motion, providing Buzbee with additional information concerning the basis for [Terry's] claims in the process." *Id.* In other words, Buzbee's TCPA motion required Terry to "prematurely marshal its proof." *Id.* Concluding Buzbee had substantially invoked the judicial

process to Terry's prejudice, we affirmed the trial court's order denying the motion to compel arbitration. *Id.* at *6.

The majority distinguishes *Buzbee* by pointing out that unlike the movant in *Buzbee*, Foley filed its motion to compel arbitration with its first defensive pleading and before it filed its TCPA Motion. Buzbee, on the other hand, did not raise or mention the issue of arbitration and did not move to compel arbitration until after the Texas Supreme Court denied Buzbee's petition for review and more than two years after suit was filed. Foley also argues that unlike the movant in *Buzbee*, Foley won its TCPA motion and thus it was the Dernicks who filed an interlocutory appeal causing further delay before Foley's Motion to Compel could be heard. In contrast, Foley argues, the movant's motion to compel arbitration in *Buzbee* was only first asserted after the Texas Supreme Court denied Buzbee's petition for review.

These are nuanced distinctions and even considering them, they militate in favor of waiver. The fact that Foley filed its Motion to Compel with its first responsive pleading, and before filing its TCPA Motion, underscores that Foley knew from the outset that the claims were subject to arbitration, yet it did nothing to set its Motion to Compel for hearing either prior to or contemporaneously with the setting of its TCPA Motion. Filing a motion to compel arbitration and making later-filed motions subject to that first filing does not, without more, preserve a party's right to arbitration, especially when, as here, the movant chooses to seek relief asking

19

the trial court to "enter a take nothing judgment dismissing the Dernicks' claims with prejudice and awarding Foley [its] reasonable and necessary attorney's fees, costs of court, and such other relief, at law or in equity, to which Foley may be entitled." Like Buzbee, Foley first sought dismissal of the Dernicks' claims with prejudice under the TCPA, but unlike Buzbee, it prevailed resulting in dismissal of the Dernicks' claim *with prejudice*—a remedy and a result Foley would not have been able to secure in arbitration.

Foley argues that *Buzbee* "does not stand for the proposition that the mere filing of a TCPA motion, in the alternative and expressly subject to an Arbitration Application, standing alone, substantially invokes the judicial process and waives a litigant's arbitration rights." I don't disagree. But there was more than the "mere filing" of a TCPA motion here. Foley sat on its Motion to Compel, choosing not to set it for hearing or submission until after adjudication of its TCPA Motion. While Foley argues that its TCPA Motion was filed subject to its Motion to Compel, by filing and requesting a ruling on its TCPA Motion before ever seeking to enforce its right to arbitration, Foley relegated its Motion to Compel to its TCPA Motion. That is, Foley sought to secure relief under its TCPA Motion first, and only should such an attempt prove unsuccessful, to pursue arbitration. As Foley stated in its TCPA Motion, if the trial court concluded Foley prevailed on its TCPA Motion, it "need

20

not reach the issue of its right to arbitrate." Foley thus effectively sought arbitration *subject* to its TCPA Motion, not the other way around.

The majority points to four cases for the proposition that we traditionally look to the filing date of a motion to compel and use that date "as the relevant data point." *See Met Int'l Trading Co., Inc. v. 49North LLC*, No. 01-24-00756-CV, 2025 WL 2413079, at *6 (Tex. App.—Houston [1st Dist.] Aug. 21, 2025, no pet.) (mem. op.); *GRGP, Inc. v. Black Forest Holdings, Inc.*, No. 01-23-00314-CV, 2023 WL 8459522, at *4 (Tex. App.—Houston [1st Dist.] Dec. 7, 2023, no pet.) (mem. op.); *Northpointe LTC, Ltd. v. Durant*, No. 01-22-00215-CV, 2022 WL 17835223, at *9 (Tex. App.—Houston [1st Dist.] Dec. 22, 2022, no pet.) (mem. op.); and *Courtright v. Allied Custom Homes, Inc.*, 647 S.W.3d 504, 517 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). I disagree.

None of those cases state that we look to the date of filing, and they would be wrong to do so. As the majority notes, we consider the totality of the circumstances in each case and there is no bright-line rule when it comes to waiver. The cases are also distinguishable. There is no indication that in any of the cases, like here, the movant waited years before seeking to set a previously filed motion to compel for hearing. On the contrary, in each, after a lengthy delay in filing the motion to compel, the motion was promptly heard and denied, resulting in the respective appeals. We therefore had no reason to focus on the date the motion to compel was set for hearing.

21

It is also worth noting that in none of the cited cases did the movant seek and obtain dismissal with prejudice before moving to compel arbitration.[11]

Foley also argues that it was faced with the "Hobson's choice" of having either to "timely invoke and preserve its statutory TCPA defense" or "risk forfeiting it altogether if any of the Dernicks' claims ultimately were held to be non-arbitrable." But that is not a predicament Foley faced. Nothing precluded Foley from pursuing *both* its right to arbitration and dismissal under the TCPA. A TCPA motion must be filed "not later than the 60th day after the date of service of the legal action." TEX. CIV. PRAC. & REM. CODE § 27.003(b). And the hearing on the motion must be set no later than "the 60th day after the date of service of the motion . . . ." *Id.* § 27.004.

Foley filed its TCPA Motion on January 25, 2022. It thus had until March 27—sixty days later—to set a hearing on its motion. Foley filed its Motion to Compel on December 27, 2021. Foley thus had ample time to set its Motion to Compel for hearing either before or concurrent with the deadline to set its TCPA

---

[11] In *GRGP, Inc. v. Black Forest Holdings, Inc.*, No. 01-23-00314-CV, 2023 WL 8459522, at \*5 (Tex. App.—Houston [1st Dist.] Dec. 7, 2023, no pet.) (mem. op.), GRGP, the arbitration movant filed three summary judgment motions on various claims asserted against it, but the trial court did not rule on the motions. And in *Met Int'l Trading Co., Inc. v. 49North LLC*, No. 01-24-00756-CV, 2025 WL 2413079, at \*8 (Tex. App.—Houston [1st Dist.] Aug. 21, 2025, no pet.) (mem. op.), Met did not seek a judgment on the merits before moving to compel arbitration, but the opposing parties won summary judgment dismissing Met's counterclaims before Met moved to compel arbitration.

Motion for hearing, and to seek dismissal under the TCPA if any "claims ultimately [were] held to be non-arbitrable." Foley did not pursue that path. It instead made a strategic decision to seek relief in the trial court that it could not otherwise secure in arbitration—early dismissal of the Dernicks' claims *with prejudice* and recovery of attorney's fees under the TCPA. And indeed, Foley obtained exactly what it sought when the trial court dismissed the Dernicks' claims entirely and awarded Foley attorneys' fees under the TCPA. Only after this Court reversed the trial court's TCPA ruling did Foley for the first time seek to have its Motion to Compel set for hearing. In other words, like the movant in *Buzbee*, Foley did not seek to enforce its right to arbitration until first moving, and in this case securing, and ultimately losing its request for TCPA relief.

Foley relies on *In re H&R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 902 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) arguing that like Foley did below, H&R Block "contemporaneously filed a motion to compel arbitration, and an alternative motion for summary judgment." In that case, it argues, our sister court rejected the waiver argument, holding that Texas law "does not stand for the proposition that a [dispositive] motion, filed in the alternative to an arbitration demand, is sufficient to result in waiver." *Id.* ("Whether a party seeks a judicial decision on the merits of the case may be *one* factor in determining waiver, but it is not the *only* factor.") (emphasis in original). I agree with that general statement, but

I disagree that *H&R Block* is applicable. In *H&R Block*, the movant moved for enforcement of the arbitration clause within two weeks of filing its answer and it sought summary judgment only as an alternative to arbitration after the nonmovant argued he was not a party to the arbitration agreement. *Id.* at 899. Neither occurred here.

Foley also relies on a statement in *Keytrade USA, Inc. v. Ain Temouchent M/V*, where the Fifth Circuit Court of Appeals, in ruling on a waiver of arbitration defense, noted that the nonmovant had offered "no legal authority for why a motion for summary judgment, filed from a defensive posture, can be characterized as an invocation of judicial process." 404 F.3d 891, 897 (5th Cir. 2005). As we held in *Pounds*, Texas law "is to the contrary." *Pounds*, 592 S.W.3d at 556 (citing *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 534–535 (Tex. App.—Houston [1st Dist.] 2007, no pet)). We also explained in *Pounds* that the court in *Keytrade* did not reject waiver "merely because of the defensive posture of the summary-judgment motion." *Id.* Rather, the court "emphasized that the defendant had filed its motion for summary judgment contemporaneously with its motion to compel arbitration, which removed any doubt as to waiver."[12] *Id.*; *see also RSL Funding, LLC v. Pippins*,

---

[12]    In *Pounds v. Rohe*, a widow (Rohe) and her stepson (Pounds) "became embroiled in litigation" over Rohe's late husband's estate. 592 S.W.3d 549, 552 (Tex. App.— Houston [1st Dist.] 2019, no pet.). The parties ultimately resolved their disputes, entering into a settlement agreement with an arbitration clause. *Id.* Rohe subsequently filed a petition for accounting and distribution in the probate court,

24

499 S.W.3d 423, 433 (Tex. 2016) (characterizing *Keytrade* as holding that "regardless of whether a motion for summary judgment invokes the judicial process, a simultaneous alternative effort to compel arbitration clearly indicates there is no intent to waive arbitration").

Had Foley attempted to secure a hearing date for its Motion to Compel or otherwise made efforts to enforce its Motion to Compel before or simultaneously with the filing of its TCPA motion, the analysis might be different. Foley, however, chose instead to move for dismissal of the Dernicks' claims *with prejudice* under the TCPA, and only after losing on that front on appeal, did it seek to enforce its right to arbitration.

---

asserting a right to reimbursement from the estate for mortgage payments she made to prevent foreclosure of property the decedent gave her. *Id.* Pounds filed a motion for summary judgment, which the trial court denied. *Id.* at 552–53. Rohe next brought a separate suit against the estate seeking reimbursement of the mortgage payments. *Id.* at 553. Pounds filed a motion to compel arbitration under the prior settlement agreement and the estate's administrator joined in the motion. *Id.* Rohe opposed the motion based on waiver. *Id.* The trial court denied the motion to compel arbitration, holding Pounds had "waived his right to arbitration by substantially invoking the judicial process, specifically by filing a motion for summary judgment[.]" *Id.* We affirmed, noting that an "attempt to resolve the merits and still retain the right to arbitration is clearly impermissible." *Id.* at 556 (citing *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 534 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). We explained that we previously have cited "moving for summary judgment or seeking a final resolution of the dispute" as examples of "impermissible conduct." *Id.* (citing *Interconex*, 224 S.W.3d at 534; *Williams Indus. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 135 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). We concluded that "the totality of the circumstances" established Pounds had "substantially invoked the judicial process before trying to compel arbitration." *Id.* at 558.

Under the totality of circumstances here, and based on our prior decision in *Buzbee*, I would conclude that Foley substantially invoked the judicial process and waived its right to arbitration by seeking to "have it both ways." *See Buzbee*, 2023 WL 7311212 at \*4 (explaining party substantially invokes judicial process when proponent of arbitration "actively tries but fails to achieve a satisfactory result in litigation before turning to arbitration" such as seeking final resolution of dispute in trial court); *see also Haddock*, 287 S.W.3d at 180 ("[W]aiver may be found where a party has tried and failed to achieve a satisfactory result before turning to arbitration. . . . Indeed, failing to seek arbitration until after proceeding in litigation to an adverse result is the clearest form of inconsistent litigation conduct and is inevitably found to constitute substantial invocation of the litigation process resulting in waiver.") (internal citations omitted); *Accord Bus. Funding, LLC v. Ellis*, 625 S.W.3d 612, 618 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (holding movant waived right to arbitration where it "delayed seeking arbitration until it was clear that it would receive an adverse result" in litigation); *In re Winter Park Constr., Inc.*, 30 S.W.3d 576, 579 (Tex. App.—Texarkana 2000, orig. proceeding) (noting courts find waiver "if the party seeking arbitration has actively tried and failed to achieve a satisfactory result in the litigation before turning to arbitration, such as

26

moving for summary judgment or otherwise seeking a final judicial resolution of the dispute") (citing cases).[13]

I do not suggest that filing and pursuing a TCPA motion by itself automatically results in waiver of the right to arbitration. My conclusion here is limited to the facts of this case, where Foley knew about the arbitration agreement from the outset but did nothing to set its Motion to Compel for ruling, opting instead to request relief under the TCPA first and ultimately securing the dismissal of the Dernicks' claims *with prejudice. See Pounds*, 592 S.W.3d at 554 ("The specifics of each case matter.") (citing *Henry*, 551 S.W.3d at 116).

## Prejudice

A party seeking to establish waiver of the right to arbitrate must also establish prejudice.[14] *See G.T. Leach Builders*, 458 S.W.3d at 511–12. "In the context of

---

[13]    In *In re Winter Park Constr., Inc.*, the court held that the defendant had not waived its right to arbitration because it "did not actively try to achieve a satisfactory result in the litigation before it sought arbitration." 30 S.W.3d 576, 579 (Tex. App.— Texarkana 2000, orig. proceeding).

[14]    In *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), the United States Supreme Court rejected any requirement of proof of prejudice as an "arbitration-specific" federal procedural rule. The Dernicks argue that as a result, they do not need to establish prejudice. Neither the Texas Supreme Court nor this Court has addressed whether *Morgan* abrogates the requirement in Texas jurisprudence that a party seeking to establish waiver of the right to arbitrate must establish prejudice. *See Preferred Pools of Houston, Inc. v. Gossai*, No. 14-23-00635-CV, 2024 WL 4457032, at *7 (Tex. App.—Houston [14th Dist.] Oct. 10, 2024, no pet.) (mem. op.) ("Whether [*Morgan*'s holding] would govern in state court as a matter of procedure is unsettled and a matter for the Texas Supreme Court to determine."); *Momentum Project Controls, LLC v. Booflies to Beefras LLC*, No. 14-22-00712-CV, 2023 WL 4196584, at *5 n.5 (Tex. App.—Houston [14th Dist.] June 27, 2023, pet. denied)

waiver of the right to arbitrate, prejudice generally focuses on the inherent unfairness caused by a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage." *Momentum Project Controls, LLC v. Booflies to Beefras LLC*, No. 14-22-00712-CV, 2023 WL 4196584, at *5 (Tex. App.—Houston [14th Dist.] June 27, 2023, pet. denied) (mem. op.) (citing *G.T. Leach Builders*, 458 S.W.3d at 515; *Perry Homes*, 258 S.W.3d at 597). Inherent unfairness may be demonstrated "in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Perry Homes*, 258 S.W.3d at 597 (citation omitted).

A nonmovant "must show the fact of prejudice, but not its extent." *Courtright*, 647 S.W.3d at 522 (citing *Perry Homes*, 258 S.W.3d at 599) (distinguishing "proof of the *fact* of prejudice with proof of its *extent*," noting nonmovants "had to show substantial invocation that prejudiced them, not precisely how much it all was.") (emphasis in original). We have said with respect to prejudice that "litigating on the merits first and then insisting on arbitration after the results of the litigation proved

---

(mem. op.) (describing issue as "unsettled" question of law). *But see Dallas Excavation Sys., Inc. v. Orellana*, 697 S.W.3d 702, 709 (Tex. App.—Dallas 2024, no pet.) (holding, pursuant to *Morgan*, "a showing of prejudice is no longer required in order to establish waiver, at least in cases involving the FAA"). We need not decide the issue, because even assuming a showing of prejudice is required, I would conclude the Dernicks established prejudice.

unsatisfactory" is a type of "unfair forum-shopping that, if condoned, would allow [the movant] to have it both ways[.]" *Pounds*, 592 S.W.3d at 558.

The Dernicks argue they established prejudice because they incurred fees and expenses resulting from Foley's actions. They argue they incurred $17,675 in fees defending against the TCPA Motion in the trial court and $66,284 in appealing the trial court's order granting Foley's TCPA Motion, for a total of $83,959 in fees. They argue "[t]he trial court could have reasonably relied on this uncontroverted evidence to find prejudice." However, "attorneys' fees and costs incurred in the litigation are only one factor in determining whether a party has been prejudiced by a delay in asserting contractual arbitration rights." *Sipriano v. Reg'l Fin. Corp. of Tex.*, No. 05-15-00397-CV, 2016 WL 2905553, at *5 (Tex. App.—Dallas May 16, 2016, no pet.) (mem. op.).[15]

Prejudice may also be established when a non-movant is required to "prematurely marshal its proof" in response to a dispositive motion. *See Buzbee*, 2023 WL 7311212, at *5; *Adams v. StaxxRing, Inc.*, 344 S.W.3d 641, 652 (Tex.

---

[15] Contrary to Foley's argument, I do not interpret *Sipriano* to say that the non-movant's incurrence of attorneys' fees and expenses can never in and of itself establish prejudice. *See Sipriano v. Reg'l Fin. Corp. of Tex.*, No. 05-15-00397-CV, 2016 WL 2905553, at *5 (Tex. App.—Dallas May 16, 2016, no pet.) (mem. op.). *See generally Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd.*, 147 S.W.3d 507, 514 (Tex. App.—San Antonio 2004, orig. proceeding) (rejecting nonmovant's only prejudice argument—that it was prejudiced by "increased and 'destructive' discovery expenses" before arbitration motion was raised—because nonmovant failed to submit evidence to trial court to support argument).

29

App.—Dallas 2011, pet. denied) (holding that requiring nonmovants to "marshal their evidence, thought process, and legal analysis" was "evidence of compromise" of nonmovants' legal position and relevant to showing prejudice); *Prof'l Advantage Software Sols.*, 2016 WL 2586690, at *5 (noting that if arbitration were allowed after nonmovant responded to three summary judgment motions, movant "would have the benefit of having forced a 'preview' of [nonmovant's] case on the merits"). In their TCPA Motion, Foley argued it was entitled to dismissal of the Dernicks' claims "because all of [their] claims implicate[d] the exercise of Foley's right to petition, and [the Dernicks] could not establish, by clear and specific evidence, a prima facie case for each essential element of those claims." Foley also argued it was entitled to "judgment based upon multiple affirmative defenses and other grounds." The Dernicks respond they were "obligated to present evidence to defeat [Foley's] TCPA motion, [thus] providing [Foley] with additional information concerning the basis for [the Dernicks'] claims in the process." (citing *Buzbee*, 2023 WL 7311212 at *12–13). They also argue that Foley "not only sought dismissal on the merits but obtained full adjudication on the merits."[16]

---

[16] The fact that Foley obtained an adjudication under the TCPA and did not merely file the TCPA motion, is significant. *See Spark Connected, LLC v. Semtech Corp.*, No. 4:18-CV-748-KPJ, 2020 WL 6591458, at *7–8 (E.D. Tex. Nov. 10, 2020) (observing that *filing* TCPA motion to dismiss was not "inconsistent with [movant's] right to arbitrate"). In *Spark*, the movants withdrew their TCPA motion before it was ruled on. *Id.*

30

A party defending a TCPA motion must present actual evidence, not merely the allegations of its petition, to establish a prima facie case for each element of its claim. *Clear Channel Outdoor*, 616 S.W.3d at 28–29. The Dernicks thus had to present evidence to defend against Foley's TCPA Motion. Foley argues that any evidence obtained from the Dernicks in their defense of Foley's TCPA Motion would have been discoverable in arbitration. Even if so, Foley's actions required the Dernicks to marshal their proof prematurely. *Adams*, 344 S.W.3d at 652 (holding that requiring nonmovants to "marshal their evidence, thought process, and legal analysis" was evidence of compromise to nonmovants' legal position and relevant to showing prejudice); *see also Prof'l Advantage Software Sols.*, 2016 WL 2586690, at *5 (observing that if "arbitration were allowed [after nonmovant responded to three summary judgment motions], [movant] would have the benefit of having forced a 'preview' of [nonmovant's] case on the merits").

In light of the foregoing, I would conclude that incurring attorneys' fees of nearly $84,000 defending against Foley's TCPA Motion in trial court and on appeal, a delay of more than three years occasioned by the granting and eventual reversal of Foley's TCPA Motion, and the fact the Dernicks had to marshal their proof prematurely to defend against the TCPA Motion sufficiently established prejudice.[17]

---

[17]  Foley relies on *In re Vesta* to argue the Dernicks were not prejudiced. While the Supreme Court in *In re Vesta* was not swayed by the more than $200,000 in expenses and fees the nonmovant incurred in litigating before the movant sought to

*See generally Momentum Project Controls*, 2023 WL 4196584, at *6 (holding attorneys' fees of $20,000 incurred in preparing case prior to other party's filing of motion to compel arbitration and almost four-year delay in asserting arbitration clause, among other things, resulted in prejudice showing); *Buzbee*, 2023 WL 7311212, at *5 (holding two-year delay in seeking arbitration, during which time nonmovant was forced to proffer evidence in response to movant's TCPA motion, was prejudicial, stating "Buzbee's conduct in 'attempt[ing] to have it both ways by switching between litigation and arbitration to [his] own advantage' evinces the 'inherent unfairness' sufficient to establish prejudice").

**Conclusion**

Because the evidence established that Foley substantially invoked the judicial process inconsistent with the right to compel arbitration and the Dernicks established prejudice, the trial court properly held that Foley waived its right to arbitrate the Dernicks' claims. I would affirm the trial court's order denying Foley's Motion to Compel.

Because the majority does not so hold and its opinion is at odds with our opinion in *Buzbee*, I respectfully dissent.

---

compel arbitration, the court noted that the pre-trial costs were "largely self-inflicted," given that the nonmovant "sent far more discovery requests than he received, and amended his petition at least eleven times." 192 S.W.3d at 763.

32

Veronica Rivas-Molloy
Justice